18978. SAWAN, INC. *v.* AMERICAN CYANAMID COMPANY.

ARGUED JUNE 14, 1955—DECIDED JULY 11, 1955—REHEARING DENIED JULY 25, 1955.

*Wm. F. Buchanan, Newell Edenfield, Lamar W. Sizemore*, for plaintiff in error.

*James M. Embry, Dunaway & Embry*, contra.

CANDLER, Justice. (After stating the foregoing facts.) The intention of the parties is the prevailing consideration in the construction of contracts. Code § 20-702. The defendant does not contend that the Advance Bulletin which it furnished the plaintiff did not contain a warranty respecting the effect on seed germination when fumigated with Acrylon. Its position is that the germinative quality of seed is not adversely affected when fumigated with Acrylon at recommended dosages in a chamber space not exceeding 1,000 cubic feet. In this case, as the evidence shows, the plaintiff, by using a dosage of 4.35 pounds of Acrylon and following the method of application specified in the bulletin, fumigated 2,051 bushels of hybrid seed corn for an exposure period of 48 hours in an atmospheric chamber containing 1,449 cubic feet of space and destroyed its germinative quality. In these circumstances, the defendant insists that the resulting damage to the plaintiff's corn was not covered by its warranty. To this we cannot agree. The Advance Bulletin positively states that "Laboratory tests have shown that Acrylon does not affect germination at recommended dosages." Following this statement, Table 1 of the bulletin states that a seed-germination test conducted by the defendant at its laboratory in Stamford, Connecticut, and one conducted at the Geneva Experiment Station in New York, show that seed corn, after being fumigated with Acrylon for 48 hours, with a dosage of 5 pounds per 1,000 cubic feet of space, had a germination percent of 98. Based on these tests, the bulletin states: "It will be noted [from these two tests] that even when fumigated with Acrylon for 48 hours, using a dosage of 5 lbs. (approximately 70 fluid ounces) per 1,000 cu. ft. of space, no injury or diminution in viability was observed." And also respecting recommended dosages, Table 2 of the bulletin states that a germination test made at the seed laboratory of the North Carolina Department of Agriculture shows that hybrid seed corn, after being fumigated with Acrylon for 18 hours with a dosage of 22 lbs. per 1,000 cubic feet of space, had a germina-

tion percent of 96. Immediately after giving the result of this test, the bulletin states: "It is obvious from the data presented in Tables 1 and 2, that even when used in extremely high concentrations Acrylon has no deleterious effect on seed germination." The bulletin then concludes with the positive assertion that Acrylon will not affect germination. With respect to laboratory recommended dosages, the bulletin is silent as to any other test concerning seed corn. But it is contended that the Advance Bulletin makes no representation or warranty as to the germinative quality of seed corn after being fumigated in a chamber containing more than 1,000 cubic feet of space. This is untenable. From its own laboratory test, the defendant represented that seed corn could be fumigated by using a dosage of 5 lbs. for an exposure period of 48 hours in a chamber containing 1,000 cubic feet of space without injury to germination. And if seed corn could be fumigated with Acrylon without injury to germination by using the defendant's recommended dosage of 5 lbs. for an exposure period of 48 hours in a fumigating chamber containing 1,000 cubic feet of space, it stands to reason that a smaller dose in a larger fumigating chamber for the same exposure period should not adversely affect its germinative quality.

Under the caption "Atmospheric Chamber Fumigation," the bulletin states: "The above-mentioned methods of fumigating small quantities of seed, either in package or in bulk, have given eminently satisfactory results, but as yet the use of Acrylon in large atmospheric fumigation chambers, ranging from 1,000 cu. ft. capacity up, has been limited. Before making any general recommendations as to dosage, exposure, and methods of application to be used under heavy load conditions, additional data must be secured. However, in the trials which have been made to date in large chambers with bagged seed, using a dosage of 3 lbs. per 1,000 cu. ft. of chamber space, and an exposure period of 48 hours, complete kills of all stages of insect life have been secured, particularly in the case of hybrid seed corn." This quoted portion of the bulletin, as we construe it, does not purport to deal with the subject of germination or injury thereto, but concerns itself with methods of application in large chambers and with the question of whether successful kills of insects can be obtained in this manner of fumigating with Acrylon. If the plaintiff was here

complaining of the failure of Acrylon to successfully kill insects, this clause in the bulletin would clearly be applicable and of importance, but such is not the case. By the Advance Bulletin a warranty respecting the use of Acrylon as a seed fumigant was intended and made by the defendant, and under the evidence the trial judge rendered a proper judgment.

*Judgment reversed. All the Justices concur.*